UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-60588-CIV-COHN/SELTZER

JUDY COPELAND,

Plaintiff,



v.

UNITED STATES, UNITED STATES
DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT and UNITED STATES
DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT, MIAMI FIELD OFFICE,

Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Amended

Complaint and Incorporated Memorandum of Law [DE 44] ("Motion to Dismiss" or

"MTD"). The Court has carefully considered the Motion to Dismiss, Plaintiff's Response

[DE 57], Defendants' Reply [DE 60], the record in this case and the applicable case

law, and is otherwise advised in the premises.

This case involves the termination of Plaintiff's benefits under the Section 8

Housing Choice Voucher Program ("Section 8"). Plaintiff's benefits were terminated by

the Housing Authority of Hollywood, Florida ("Housing Authority") after she was evicted

from her residence. The Amended Complaint, filed August 28, 2008 [DE 42], seeks

judicial review under the Administrative Procedure Act ("APA") of the United States

Department of Housing and Urban Development's ("HUD") informal investigation into

the matter. Plaintiff, who is proceeding *pro se*, alleges that HUD's decision that the

Housing Authority took "appropriate actions" was arbitrary, capricious, an abuse of discretion and not in accordance with law. Am. Compl. ¶ 3. Plaintiff requests that the Court "vacate and remand" HUD's decision and require HUD to "issue a decision in accordance" with the law. Id. ¶ 14. In the Motion to Dismiss, Defendants argue that HUD's oversight of the Housing Authority is committed to agency discretion and is not reviewable by this Court.

## I. BACKGROUND

### 1. The Regulatory Scheme

The Section 8 program was enacted as part of the United States Housing Act, 42 U.S.C. § 1437(f), in an effort to assist low-income families in obtaining a decent place to live and to promote economically-mixed housing. 42 U.S.C. § 1437f(a). The Section 8 program is administered by local public housing authorities that are responsible for, among other things, (1) determining tenant eligibility under the applicable regulations, see 24 C.F.R. § 982.201; (2) providing the selected tenants with an overview of the program and a voucher to obtain benefits, see 24 C.F.R. §§ 982.301 and 982.302; (3) denying and terminating assistance, see 24 C.F.R. § 982.552; and (4) conducting hearings to respond to participants' complaints against the local public housing authorities. See 24 C.F.R. § 966.52.

After a tenant is approved for the Section 8 program and receives a voucher from the local public housing authority, the tenant locates a dwelling unit that is owned by a private landlord. See MTD at 2. The local public housing authority must then approve the dwelling unit and the lease agreement and ensure that all regulatory

2

requirements have been satisfied. See 24 C.F.R. § 982.305. If these conditions are met, the local public housing authority and the landlord enter into a Housing Assistance Payments Contract under which the landlord receives payment of a Section 8 subsidy for rental of the dwelling unit by the tenant. See id. The tenant has responsibilities under the Section 8 program which include disclosing income and resources, allowing inspection of the unit, promptly providing the local public housing authority with any eviction notice and refraining from serious or repeated violations of the lease. See 24 C.F.R. § 982.551.

## 2.    Relevant Facts

The specific circumstances giving rise to this action began on June 20, 2003 when Ms. Copeland's landlord terminated her lease. The landlord terminated the lease because Ms. Copeland violated its terms by allowing her son to move into her one-bedroom apartment. After the lease was terminated, Ms. Copeland stopped paying her portion of the rent, but she did not vacate the premises. Ms. Copeland was evicted by court order in December 2003 and the eviction order was based solely on Copeland's failure to pay her portion of the rent for the five months following the termination of her lease. On January 7, 2004, the Housing Authority[1] sent Ms. Copeland a letter informing her that her failure to pay rent was a "serious violation of the lease" under the Housing Authority regulations and that the regulations mandated that her Section 8 benefits be terminated. See C.F.R. § 982.552(b) ("The PHA must terminate program assistance for

---

[1]      The Housing Authority is the local public housing authority, commonly referred to as a "PHA" in the applicable regulations, administering the Section 8 program under which Ms. Copeland received a subsidy.

a family evicted from housing assisted under the program for serious violation of the lease.").

HUD reviewed the circumstances surrounding the Housing Authority's termination of Ms. Copeland's Section 8 subsidy in response to inquires from Ms. Copeland's representative, Carl Shell. In a letter dated February 3, 2004, HUD's Miami Field Office ("Field Office") represented that it contacted the Housing Authority to discuss the matter in detail. The letter goes on to state that the Field Office found that the termination was in accordance with C.F.R. § 982.552(b) because Ms. Copeland was evicted from her unit for the failure to pay rent. In addition, the Field Office found that Ms. Copeland was also in violation of her obligation under 24 C.F.R. § 982.551(g) because she did not promptly supply the Housing Authority with a copy of her eviction notice. The Field Office also found that, contrary to Mr. Shell's assertion, there was no conflict of interest at a hearing to be held on Ms. Copeland's informal appeal as the hearing officer assigned to the matter was not affiliated with the Housing Authority. The letter concluded that the Housing Authority "has taken appropriate actions" regarding Ms. Copeland's situation.

## 3. Prior Litigation

This is the fourth lawsuit Ms. Copeland has brought regarding the termination of her Section 8 housing subsidy. On September 29, 2004, Ms. Copeland brought suit in Florida state court against the Housing Authority and several of its employees alleging violations of various HUD regulations and claiming that the defendants improperly terminated Ms. Copeland's participation in the Section 8 program. Specifically, she contended that her failure to pay rent was not a "serious violation of the lease" because

4

she stopped paying rent only after her lease had been terminated. After a hearing, the state court granted summary judgment in favor of defendants and the Fourth District Court of Appeal affirmed the decision without opinion.

On September 18, 2006, Ms. Copeland filed a second action in state court alleging claims under 42 U.S.C. § 1983 against the Housing Authority and several of its employees. Ms. Copeland argued that she had been deprived of constitutionally-protected property rights and that the Housing Authority violated federal housing regulations when it terminated her benefits. The Housing Authority and one of its employees, Tim Schwartz, filed separate motions to dismiss. After conducting a hearing, the court dismissed the entire action with prejudice on May 22, 2007. Ms. Copeland initially appealed that decision, but then voluntarily dismissed the appeal to pursue her claims in federal court.

On June 13, 2007, Ms. Copeland filed a lawsuit in federal court against the Housing Authority and its employee, Tim Schwartz. Ms. Copeland brought claims under § 1983 alleging that the termination of her Section 8 housing benefits deprived her of a constitutionally-protected property right and violated due process.[2] On December 20, 2007, Judge Adalberto Jordan entered an order granting defendants' motion for summary judgment ruling that Copeland's claim was barred by *res judicata*.

_____

[2]     Copeland also included a claim that her constitutional rights were violated when the Housing Authority did not continue her hearing until she was able to retain counsel. The Eleventh Circuit found that the district court correctly dismissed this claim for failure to state a cause of action upon which relief can be granted. See Copeland v. Hous. Auth., 2008 WL 4997184, *1 n.1 (11th Cir. Nov. 25, 2008).

The Eleventh Circuit affirmed Judge Jordan's decision on November 25, 2008. See Copeland, 2008 WL 4997184.

## II. LEGAL STANDARD

At this stage in the litigation, the Court must consider the allegations in the Complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). The Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1979) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).

An action may proceed in this Court only if federal subject matter jurisdiction exists. Lifestar Ambulance Serv., Inc. v. United States, 365 F.3d 1293, 1295 (11th Cir. 2004), cert. denied, 543 U.S. 1050 (2005). Rule 12(b)(1) permits litigants to move for dismissal when the court lacks jurisdiction over the subject matter of the dispute. Fed.

6

R. Civ. P. 12(b)(1). "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (internal citations omitted). Defendants' Motion to Dismiss raises a facial attack as to whether this Court has subject matter jurisdiction over Plaintiff's claims.

## III. ANALYSIS

Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Defendants argue that the investigation HUD undertook in response to Ms. Copeland's complaint and its ultimate decision not to take enforcement action against the Housing Authority is committed to agency discretion. Therefore, HUD's decision not to overturn the Housing Authority's termination of Ms. Copeland's Section 8 benefits is not reviewable by this Court. The Court agrees with the Defendants for the reasons discussed below.

Under section 701(a) of the APA, judicial review of an agency's action or inaction is not permitted if "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The first exception is straightforward. The Supreme Court has interpreted the second exception to apply to circumstances where "the statute is drawn so that a court would have no meaningful

7

standard against which to judge the agency's exercise of discretion." Heckler v.
Chaney, 470 U.S. 821, 834 (1985). Nevertheless, there is generally a presumption that
agency action is reviewable. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401
U.S. 402, 410 (1971).

In Chaney, the Supreme Court held that this presumption is reversed in cases
involving "an agency's refusal to take requested enforcement action." Chaney 470 U.S.
at 831. The holding in Chaney was, in part, based on the reasoning that "an agency's
refusal to institute proceedings shares to some extent the characteristics of the decision
of a prosecutor in the Executive Branch not to indict – a decision which has long been
regarded as the special province of the Executive Branch, inasmuch as it is the
Executive who is charged by the Constitution to 'take Care that the Laws be faithfully
executed.'" Id. at 832 (quoting U.S. Const., Art. II, § 3). The presumption that agency
decisions not to institute proceedings are unreviewable "may be rebutted where the
statute has provided substantive guidelines for the agency to follow in exercising its
enforcement powers." Chaney, 470 U.S. at 833.

Defendants represent that "[n]owhere in the United States Housing Act or
implementing regulations is there an enumeration of standards or guidelines for
conducting an investigation of Ms. Copeland's complaint regarding termination of her
Section 8 subsidy." MTD at 4. Although the regulations contain detailed guidelines that
control how local public housing authorities must handle a termination, see 24 C.F.R. §
982.552, and requirements specifying when and how a local public housing authority
must conduct a hearing, see 24 C.F.R. §§ 966.55-57 and 982.555, there is not similar
guidance with respect to HUD's responsibilities. This reading of the regulatory scheme

8

is consistent with how it has been described by the Supreme Court. In Wright v.

Roanoke Redevelopment & Housing Authority, 479 U.S. 418, 426 (1987), the Supreme

Court found that HUD has a "longstanding regulatory requirement that each PHA

provide formal grievance procedures for the resolution of tenant disputes with the PHA

arising out of their lease or PHA regulations." Id. at 426. The Wright opinion goes on to

state:

> These procedures . . . include informal and formal hearings
> and administrative appeals, conducted within each PHA by
> impartial decisionmakers, to consider adverse decisions
> taken against tenants by the PHA. Congress' aim was to
> provide a decentralized, informal, and relatively
> non-adversarial administrative process for resolving
> tenant-management disputes.

Id. at 426 (1987) (quotation omitted). Significantly, the Supreme Court found that "HUD

itself has never provided a procedure by which tenants could complain to it about the

alleged failures of PHA's to abide by . . . HUD regulations; nor has it taken unto itself

the task of reviewing PHA grievance procedure decisions." Id. Accordingly, the Court

finds that there are no meaningful standards under which to review HUD's decision to

approve the Housing Authority's termination of Ms. Copeland's Section 8 benefits.

Plaintiff attempts to fill this void by citing to 42 U.S.C. § 1437c-1 and 24 C.F.R. §

903.25 as potential sources for a standard to evaluate HUD's determination. The laws

cited by Plaintiff deal with "PHA Plans." Title 42, U.S.C. § 1437c-1 of the United States

Housing Act ("Act") authorizes HUD to require that each local housing authority that

receives assistance under the Act submit a five-year plan and an annual plan. See 42

U.S.C. § 1437c-1. These plans must include such things as the goals, objectives,

needs, resources, policies and rules of the local housing authority.  See id.  Title 42

U.S.C. § 1437c-1 reads as follows:

> (2) Investigation and enforcement. In carrying out this title
> [42 USCS §§ 1437 et seq.], the Secretary shall –

> (A) provide an appropriate response to any complaint
> concerning noncompliance by a public housing agency with
> the applicable public housing agency plan; and

> (B) if the Secretary determines, based on a finding of the
> Secretary or other information available to the Secretary, that
> a public housing agency is not complying with the applicable
> public housing agency plan, take such actions as the
> Secretary determines to be appropriate to ensure such
> compliance.

42 U.S.C. § 1437c-1(l)(2).  Similarly, 24 C.F.R. § 982.54 requires that each local public

housing authority must also adopt a written "administrative plan," as a supporting

document to the PHA Plans, which "must be in accordance with HUD regulations and

requirements."  See 24 C.F.R. § 982.54(b).  The regulation cited by Plaintiff, 24 C.R.F.

§ 903.25, provides:

> A PHA must comply with the rules, standards and policies
> established in the plans. To ensure that a PHA is in
> compliance with all policies, rules, and standards adopted in
> the plan approved by HUD, HUD shall, as it deems
> appropriate, respond to any complaint concerning PHA
> noncompliance with its plan. If HUD should determine that a
> PHA is not in compliance with its plan, HUD will take
> whatever action it deems necessary and appropriate.

24 C.F.R. § 903.25 (emphasis added).[3]

---

[3]    Plaintiff requests that the Court order the Defendants to provide a copy of
the Housing Authority's plan in order to "make an informed decision."  The Court
declines to do so because the Housing Authority's plan governs the actions of the
Housing Authority – not the actions of HUD.  For HUD's actions to be reviewable,
Congress or the agency, itself, must articulate standards to evaluate such actions.

The Court finds that the laws cited by Plaintiff reinforce the point that HUD's

oversight of the local public housing authority is committed to agency discretion. See

Chaney, 470 U.S. at 835 (finding agency's refusal to take enforcment action was

unreviewable where the "enforcement provisions [at issue] commit complete discretion

to the Secretary to decide how and when they should be exercised"). The agency is in

a superior position to a district court when determining what action is "necessary and

appropriate" for HUD to take in response to a complaint against a local public housing

authority. 24 C.F.R. § 903.25. With respect to Ms. Copeland's case, whether "the

agency should have dispatched investigators or expended more investigatory resources

is precisely the type of determination that the Supreme Court stated that an agency, as

opposed to a court, is better equipped to make." MTD at 4 (citing Chaney, 470 U.S. at

831-32 ("The agency is far better equipped than the courts to deal with the many

variables involved in the proper ordering of its priorities.")). Therefore, the Court finds

that the actions HUD took in response to Ms. Copeland's complaint against the Housing

Authority are not reviewable by this Court. See Marlow v. U.S. Dept. of Educ., 820 F.2d

581, 582-83 (2nd Cir. 1987) cert. denied, 484 U.S. 1044 (1988) (finding review of

Department of Education's determination that Board of Education had not discriminated

against plaintiff is not reviewable under APA because relevant section of Rehabilitation

Act "provides no express guidelines for such a decision and indeed neither the statute

nor regulations impose significant substantive limitations on the Department's

investigation and resolution of individual complaints of discrimination"); West v.

Jackson, 538 F. Supp. 2d 12, 22 (D.D.C. 2008) (holding that a plaintiff could not bring

an action against HUD for failure to investigate his discrimination claim because "HUD,

11

in its discretion, determined that there was no reasonable cause to believe that" the plaintiff was discriminated against); Timmons, et al. v. Cisneros, et al., 1993 WL 335046, \*4 (E.D. Penn. Aug. 30, 1993) (concluding that "HUD has broad discretion under the National Housing Act of 1937 in how it deals with public housing tenant complaints since the statute provides no guidelines for the exercise of enforcement discretion").[4]

---

[4]      The West case provides an alternative ground for dismissal. In West, the court found that the "APA provides that a final agency action is subject to judicial review *unless* there is no other adequate remedy." West, 538 F. Supp. 2d at 21 (holding that there was no subject matter jurisdiction under the APA for the plaintiff's claims against HUD because the plaintiff could bring an action against the entity which allegedly discriminated against him) (emphasis in original). In this case, the regulatory scheme provides that an adverse determination by the local public housing authority shall in no way affect the rights of a tenant either to seek "trial de novo or judicial review in any judicial proceedings which may thereafter be brought in the matter." 24 C.F.R. § 966.57(c). Therefore, HUD's alleged failure to reverse the Housing Authority's decision did not leave Ms. Copeland without an opportunity to seek review of the termination of her Section 8 benefits. Ms. Copeland had the right to bring an action, and in fact brought three actions, against the Housing Authority. Simply because those actions were unsuccessful on the merits does not mean that Plaintiff did not have an adequate remedy to attempt to redress the termination of her Section 8 benefits. Accordingly, the Court finds that HUD's actions are not subject to review because Ms. Copeland had an adequate remedy against the Housing Authority. See Turner v. Sec'y of HUD, 449 F.3d 536 (3d Cir. 2006), cert denied, Turner v. Jackson, 549 U.S. 1117, 127 S.Ct. 998 (2007); Godwin v. Sec'y of HUD, 356 F.3d 310 (D.C. Cir. 2004).

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants'

Motion to Dismiss Amended Complaint [DE 44] is hereby **GRANTED**.[5]

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 22nd day of December, 2008.

**JAMES I. COHN
UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of record via CM/ECF

Judy Copeland, *pro se*
2037 Madison St.
Apt. 2
Hollywood, FL 33020

---

[5]     The Court notes that should Ms. Copeland seek to re-apply for benefits under the Section 8 program, her prior termination does not automatically require that she be denied assistance. The applicable regulations provide that the "PHA may at any time deny program assistance for an applicant" that has previously had assistance terminated under the program.  24 C.F.R. § 982.552(c)(1)(3) (emphasis added). Further, "[i]n determining whether to deny or terminate assistance because of action or failure to act," when the applicant is a person with disabilities, the public housing authority decision "concerning such action is subject to consideration of reasonable accommodation in accordance" with 24 C.F.R. § 891.100 *et seq.*  24 C.F.R. § 982.552(c)(2)(iv).